IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| DONALD B. ROE, Personal<br>Representative of the<br>Estate of Socorro Mejia,<br>deceased, | )<br>)<br>)<br>)<br>) | |
|     Plaintiff, | )<br>) | |
|     v. | )<br>)<br>) | CIVIL ACTION NO.<br>2:08cv837-MHT<br>(WO) |
| MICHELIN NORTH AMERICA,<br>INC., and MICHELIN<br>AMERICAS RESEARCH &<br>DEVELOPMENT CORPORATION, | )<br>)<br>)<br>)<br>) | |
|     Defendants. | ) | |

### OPINION AND ORDER

Defendants Michelin North America, Inc. and Michelin

Americas Research & Development Corporation removed this

lawsuit from an Alabama state court to this federal court

based on diversity-of-citizenship jurisdiction, pursuant

to 28 U.S.C. §§ 1332 and 1441.[1]  Plaintiff Donald B. Roe

---

1. In its response to the motion for remand,
Michelin North America clarified that it had merged with
Michelin Americas in January 2008; Michelin Americas is
now a division of Michelin North America.  Therefore, the
removal and responses to the motion for remand were filed
(continued...)

now moves for remand, arguing that the Michelin defendants have failed to establish that the $ 75,000 amount-in-controversy requirement has been met. Roe also argues that removal is "unreasonable" and moves the court to award him costs and fees pursuant to 28 U.S.C. §§ 1446 and 1447(c). For the reasons outlined below, the court holds that the Michelin defendants have demonstrated that the amount-in-controversy requirement is met. Roe's motion for remand and his request for costs and fees will be denied.

## I.

Roe filed this wrongful-death product-liability case as representative of the estate of Socorro Mejia. He alleges that, while Mejia was riding as a passenger in a Ford Explorer, a Michelin tire on the vehicle blew out (the tread separated from the sidewall), causing the

--------------------------------

1.   (...continued)
by Michelin North America on behalf of both named defendants.

vehicle to lose control and roll, killing Mejia. Roe alleges that the Michelin defendants acted negligently and wantonly in designing, developing, and selling the tire, which had a tendency to blow out under foreseeable driving conditions. Roe seeks damages for Mejia's wrongful death.

Wrongful death claims in Alabama are governed by 1975 Ala. Code § 6-5-410. Recovery is limited to punitive damages, which "are within the sound and honest discretion of the jury." Dees v. Gilley, 339 So.2d 1000, 1002 (Ala. 1976). This discretion, however, is not wholly unguided; punitive damages in a wrongful-death case should be imposed based on "the gravity of the wrong done, the propriety of punishing the wrongdoer, and the need to deter similar wrongs in order to preserve human life." Estes Health Care Centers, Inc. v. Bannerman, 411 So.2d 109, 113 (Ala. 1982); accord General Telephone Co. of Ala. v. Cornish, 280 So.2d 541, 545 (Ala. 1973) ("this discretion is not an unbridled or arbitrary one," and

"the jury should give due regard to the enormity or not of the wrong and to the necessity of preventing similar wrongs") (quoting <u>Liberty Nat'l Life Ins. Co. v. Weldon</u>, 100 So.2d 696, 713 (Ala. 1957)).


## II.

A defendant seeking removal pursuant to diversity-of-citizenship jurisdiction must show, first, that the plaintiff and the defendant are citizens of different States (which Roe concedes).  Second, where damages have not been specified by the plaintiff, the defendant must show by a preponderance of the evidence that the $ 75,000 amount-in-controversy requirement is met.  <u>Lowery v. Alabama Power Co.</u>, 483 F.3d 1184, 1209-11 (11th Cir. 2007), <u>cert. denied</u>, 128 S.Ct. 2877 (2008); <u>Leonard v. Enterprise Rent-a-Car</u>, 279 F.3d 967, 972 (11th Cir. 2002).  "If the jurisdictional amount is either stated clearly on the face of the documents before the court, or

readily deducible from them, then the court has jurisdiction." <u>Lowery</u>, 483 F.3d at 1211.

In the present case, it is "readily deducible" and "clear" from the facts alleged in Roe's complaint that the amount-in-controversy requirement is met. As stated above, Alabama courts have established that punitive damages in wrongful-death cases should be imposed according to several factors: the gravity of the wrong, the appropriateness of punishing the defendant, and the need to deter others. <u>Estes Health Care Centers</u>, 411 So.2d at 113. As each of these factors increases, so must the damages imposed to meet them. Likewise, larger damage awards are required to deter and punish the behavior of larger companies.

Applying these principles to this case, the court believes the amount-in-controversy requirement is met. First, Roe asserts that the Michelin defendants wantonly caused the loss of a human life, which conduct involves a high degree of culpability, making the need for

5

punishment and deterrence all the more exigent.  See 1975
Ala. Code 6-11-20(b)(3) ("Wantonness. Conduct which is
carried on with a reckless or conscious disregard of the
rights or safety of others."); see also Lynn Strickland
Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc., 510
So.2d 142, 145-46 (Ala. 1987) ("This Court has recognized
that wantonness is qualitatively different from, and is
more than an aggravated form of, negligence.").   In
addition, the Michelin defendants are a large tire
company, and any award that is soundly and honestly
calculated to punish and deter its wanton behavior, which
placed human lives at risk, would have to be substantial.
Therefore, it is not only "readily deducible" and "clear"
that this case involves more (and, indeed, much more)
than $ 75,000, it is nearly impossible to conclude
otherwise.

Roe asserts that, because he does not put a dollar
figure on his claim, the conclusion that it involves more
than $ 75,000 is "speculative."   Lowery, 483 F.3d at

1214-15 ("If that evidence is insufficient to establish
that removal was proper or that jurisdiction was present,
neither the defendants nor the court may speculate in an
attempt to make up for the notice's failings."). Indeed,
several courts have interpreted <u>Lowery</u> to require remand
in wrongful-death cases similar to this one, where the
removing defendant is unable to put a specific number on
the damages or provide a document received from the
plaintiff containing "an unambiguous statement that
clearly establishes federal jurisdiction," <u>id.</u> at 1215
n.63. <u>See, e.g.</u>, <u>Thibodeaux v. Paccar, Inc.</u>, 592
F.Supp.2d 1377, 1381 (M.D. Ala. 2009) (Fuller, C.J.)
(holding that <u>Lowery</u> required remand because "the measure
of damages in an Alabama wrongful death claim is not the
value of human life but rather the wrongfulness of the
defendant's conduct" and "[t]here is no evidence of
Defendant's culpability before the Court"); <u>Siniard v.
Ford Motor Co.</u>, 554 F. Supp. 2d 1276, 1278-79 (M.D. Ala.
2008) (Fuller, C.J.) (holding that <u>Lowery</u> required remand

7

for failure to establish amount in controversy in Alabama product-liability case involving a fatal motor-vehicle accident); <u>Yates v. Mediatronic, Inc.</u>, 2008 WL 4016599 (S.D. Ala. Aug. 26, 2008) (DuBose, J.) (finding that defendant failed to establish amount in controversy in Alabama wrongful-death case involving malfunction of pacemaker and medical malpractice).

This court cannot agree that it is "speculative" that this case involves more than $ 75,000. Nothing in <u>Lowery</u> says a district court must suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount. <u>Lowery</u> provides that the standard for stating a plausible claim for relief under Federal Rule of Civil Procedure 8 applies to 28 U.S.C. § 1446 removal notices as well. 483 F.3d at 1216-1217 ("Just as a plaintiff bringing an original action is bound to assert jurisdictional bases under Rule 8(a), a removing defendant must also allege the factual bases for federal jurisdiction in its notice of removal under § 1446(a).");

8

id. at 1217 n.73 ("Section 1446(a)'s requirement of 'a short and plain statement of the grounds for removal' is consonant with the pleading requirements of Rule 8(a)."); id. at 1217 n.74 ("The legislative history for § 1446 is limited, but it does indicate that Congress intended § 1446 to be read alongside the good faith requirements of [Federal Rule of Civil Procedure] 11 and Rule 8(a) pleading requirements.").  Therefore, just as a district court can use, pursuant to Rule 8, its "judicial experience and common sense" to conclude that a dispute over the ownership of a non-unique Snicker's candy bar would not satisfy the jurisdictional amount and thus would warrant dismissal of an originally filed lawsuit, it can use, pursuant to § 1446, its "judicial experience and common sense" to conclude that a dispute in which the wanton conduct of a large company resulting in a death indisputably does satisfy the jurisdictional amount and thus does not warrant remand.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will ... be a

9

context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Therefore, while it would be speculative to specify the exact dollar amount at issue in this case, it is not speculative to conclude from the egregious conduct alleged that the amount, whatever it is, far exceeds $ 75,000. Indeed, the court cannot image a plaintiff's lawyer saying with a straight face that this wrongful-death case should be valued at no more than $ 75,000. Such a representation would fail the so-called "laugh test." Thus, the complaint "unambiguously" reflects that the amount involved is more than $ 75,000. See Louis Pizitz Dry Goods Co. v. Yeldell, 274 U.S. 112, 116 (1927) (Alabama's wrongful-death statute reflects its "attempt to preserve human life by making homicide expensive").

Also, the court cannot overlook the unique nature of the type of damages at issue here. Alabama is the only State that allows only discretionary punitive damages in wrongful-death cases. Bonnie Lee Branum, Alabama's Wrongful Death Act: The Jurisprudence of Accounting, 55

10

Ala. L. Rev. 883, 883 (2004) (discussing uniqueness of Alabama's wrongful-death statute).[2]  Such damages cannot be tied to concrete compensatory items such as future earnings, medical fees, and funeral expenses.  Gilbert v. St. Louis-San Francisco R. Co., 514 F.2d 1277, 1278 (5th Cir. 1975) ("The remedy under [Alabama's Wrongful Death Act] is punitive only; the jury's monetary award is not calculated to reflect ordinary compensable items such as loss of support, funeral expenses, or perhaps loss of society.");[3] Estes Health Care Centers, 411 So.2d at 113 (indicating that, in wrongful-death action involving

---

2.   Previously, Massachusetts joined Alabama in this practice.  See Van Dusen v. Barrack, 376 U.S. 612, 629 (1964) ("Only two States, Alabama and Massachusetts, award only punitive damages for wrongful deaths.") (internal quotation marks omitted).   Massachusetts, however, changed this rule in 1974, when "the Legislature transformed the statute ... allowing compensatory damages for statutorily-described consortium-like claims." Hayes v. Pediatric Health Care Assocs., Inc., 2008 WL 240942, at *3 (Mass. Super. Jan. 7, 2008).

3.   In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

death of severely retarded individual, trial court correctly ruled that compensation was not measure of damages); Kurn v. Counts, 22 So.2d 725, 729 (Ala. 1945) ("The evidence as to the age, health, and absence of physical defects of decedent was not material on any issue in the case. ... [U]nder the statute the damages are punitive only.").

As a result, wrongful-death damages will seldom, if ever, be reduced to dollar figures as a formal part of the litigation except in final settlement or at trial, with the result that Alabama's wrongful-death cases (unlike Georgia's and Florida's) will seldom, if ever, be removable to federal court.  Contrast, e.g., Branson v. Medtronic, Inc., 2007 WL 170094, at *5 (M.D. Fla. Jan. 18, 2007) (Hodges, J.) (denying remand in wrongful-death case after citing long list of compensatory damages sought), with, e.g., Thibodeaux, 592 F.Supp.2d at 1381 (holding that Lowery required remand because "the measure of damages in an Alabama wrongful death claim is not the value of human life but rather the wrongfulness of the

12

defendant's conduct" and "[t]here is no evidence of Defendant's culpability before the Court"); <u>Siniard</u>, 554 F. Supp. 2d at 1278-79 (holding that <u>Lowery</u> required remand for failure to establish amount in controversy in Alabama product-liability case involving a fatal motor-vehicle accident); <u>Yates</u>, 2008 WL 4016599, at *9 (finding that defendant failed to establish amount in controversy in Alabama wrongful-death case involving malfunction of pacemaker and medical malpractice).

Surely, unless clearly and absolutely required by law, <u>Lowery</u> should not be interpreted to foreclose, essentially singularly and categorically, the removal of Alabama wrongful-death cases within the Eleventh Circuit. Indeed, if <u>Lowery</u> were applied nationwide and interpreted as Roe would have it, Alabama's would be the only wrongful-death cases in the nation that would be, for the most part, unremovable. Unless unavoidable, Alabama's wrongful-death cases should not be so singularly shutout and thus treated differently from the other 49 States' wrongful-death cases. <u>Cf</u>. <u>Northwest Austin Mun. Utility</u>

13

<u>Dist. No. One v. Holder</u>, 129 S.Ct. 2504, 2512 (2009) ("The [Voting Rights] Act  differentiates between the States, despite our historic tradition that all the States enjoy 'equal sovereignty.' ... But a departure from the fundamental principle of equal sovereignty requires a showing that a statute's disparate geographic coverage is sufficiently related to the problem that it targets.").

Finally, there is another reason it does not make sense to read <u>Lowery</u> as permitting removal only where there is a document containing a dollar figure for damages above $ 75,000.  In some cases, a plaintiff may seek only injunctive relief and, as a result, a dollar amount may never be stated.  Nevertheless, it may be perfectly "clear" or "readily deducible" that the injunctive relief is worth more than $ 75,000.

Admittedly, there is language in <u>Lowery</u> that appears to suggest that, before a defendant may remove a case, the plaintiff's complaint, or another document received from the plaintiff, must set forth a concrete or

14

expressed dollar figure establishing damages over $ 75,000.  483 F.3d at 1213 n.63 ("We think it highly questionable whether a defendant could ever file a notice of removal on diversity grounds in a case such as the one before us--where the defendant, the party with the burden of proof, has only bare pleadings containing unspecified damages on which to base its notice--without seriously testing the limits of compliance with [Federal Rule of Civil Procedure] 11."); id. at 1213 n.63 ("[B]ecause a plaintiff who has chosen to file her case in state court will generally wish to remain beyond the reach of federal jurisdiction, and as a result, she will not assign a specific amount to the damages sought in her complaint, ... the defendant would need an 'other paper' to provide the grounds for removal under the second paragraph of § 1446(b).  In the absence of such a document, the defendant's appraisal of the amount in controversy may be purely speculative and will ordinarily not provide grounds for his counsel to sign a notice of removal in good faith."); id. at 1219 ("Th[e] complaint contains

15

neither an ad damnum clause indicating the amount of damages sought, nor any other concrete information about the value of plaintiffs' claims.  As such, we find no unambiguous statement on the face of the amended complaint that would be sufficient to establish that plaintiffs' claims potentially exceed $ 5,000,000 [jurisdictional amount] in aggregate."); but see Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001) ("When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement.").

One could generally argue that these comments from Lowery are dicta.  However, while Lowery is quite lengthy and replete with footnotes (with much of the language critical to the disposition of this case in footnotes), this court must admit that whether the above comments are dicta is, at best, quite close, since Lowery, in reaching its holding, expressly stated that, because "Th[e]

16

complaint contains neither an ad damnum clause indicating the amount of damages sought, nor any other concrete information about the value of plaintiffs claims, ... we find no unambiguous statement on the face of the amended complaint that would be sufficient to establish that plaintiffs' claims potentially exceed [jurisdictional amount]." 483 F.3d at 1219.

More importantly, though, the Lowery court was not presented with the unique circumstance of Alabama's wrongful-death statute. The Eleventh Circuit Court of Appeals may be willing to recognize an exception for such cases (especially because the unique circumstance results from Alabama's "substantive law") since Lowery was willing to recognize an exception in another context based on "substantive law." 483 F.3d at 1214 n.66. ("Moreover, there are some exceptions to the rule that the court is limited to considering the removing documents. A defendant would be free to introduce evidence regarding damages arising from a source such as a contract provision whether or not the defendant

17

received the contract from the plaintiff.  In such situations, the underlying substantive law provides a rule that allows the court to determine the amount of damages. For example, in contract law, the default measure of damages is expectation damages; a court may look to the contract and determine what those damages would be.").

Also, since Lowery the Supreme Court has made clear that trial courts are to use their "judicial experience and common sense" in "[d]etermining whether a complaint states a plausible claim for relief" under Rule 8, Iqbal, 129 S.Ct. at 1950, a rule, which according to Lowery, is "consonant" with "[§] 1446's requirement of 'a short and plain statement of the grounds for removal.'"  483 F.3d at 1217 n.73.

Perhaps most importantly, if this court were to remand this Alabama wrongful-death case to state court in the face of such doubt about the applicability of Lowery, there might be no opportunity for the Eleventh Circuit to review the important question presented--a question of

particular and immediate importance for Alabama wrongful-death cases.  A remand based on lack of jurisdictional amount is, for the most part, not reviewable on appeal, 28 U.S.C. § 1447(d), except in the context of the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.), and, while perhaps theoretically possible, it is most unlikely that an Alabama wrongful-death case would arise in that context.

The court therefore will not remand Roe's case.[4]

\*\*\*

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiff Donald B. Roe's motion to remand

---

4.  The court is not saying that all wrongful-death cases between diverse parties in Alabama will be removable.  Courts must look to the wrong alleged, the harm, and the nature of the defendant in each case. The court is, however, saying that the law should not be that virtually no Alabama wrongful-death cases are removable.

19

and request for costs (doc. no. 9) are denied.

DONE, this the 28th day of July, 2009.

_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE